# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MIGUEL ESPINOZA HULKE,<br><br>              Petitioner,<br><br>v.<br><br>SHERIFF DALE J. SCHMIDT and<br>HENRY LUCERO,<br><br>              Defendants. | Case No. 21-CV-845-JPS<br><br>**ORDER** |

      This case presents a novel issue in this Circuit. The question is whether Miguel Espinoza Hulke ("Hulke"), who is not a citizen of the United States and who has been held in jail for nearly two years pending the outcome of his appealed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), is constitutionally entitled to a second bond hearing pursuant to 8 U.S.C. § 1226(a). Hulke brings this petition for habeas relief pursuant to 28 U.S.C. § 2241. The Government contends that Hulke, who received a bond hearing earlier in the proceedings, has received all the process that he is due. Hulke argues that the burden of proof imposed during the original bond hearing was improperly placed on him and, in the alternative, that he has been detained for so long that a second bond hearing is constitutionally due.

      For the reasons explained below, the Court will grant Hulke's habeas petition and deny the Government's motion to dismiss. Hulke shall receive a second bond hearing, which will occur before the assigned immigration judge. *See* 8 U.S.C. § 1226(a), (e) (conferring authority for immigration detention to the administrative branch and limiting judicial review). At that

hearing, "due process requires the [G]overnment to either (1) prove by clear and convincing evidence that [Hulke] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F 4th 19, 41 (1st Cir. 2021).

1.  **RELEVANT FACTS AND PROCEDURAL BACKGROUND**

    Hulke, a Peruvian citizen, has been subject to removal proceedings for the past seven years. (Docket #1 ¶ 25). According to his habeas petition, Hulke suffered persecution for his sexual orientation in Peru. When he was fourteen years old, he came to the United States to visit his sister, who had been adopted by an American family. The American family wished to adopt Hulke as well, but a translation error at the Peruvian embassy led the family to believe that they could not adopt him until he turned eighteen. On his eighteenth birthday, when the American family attempted to adopt Hulke, they were informed that he was too old to obtain citizenship through the adoption.

    Although Hulke is able to live as an openly gay man in the United States, he struggles with his past trauma and lack of immigration status. In 2012, after Hulke was convicted of driving under the influence ("DUI"), the Department of Homeland Security ("DHS") placed Hulke in removal proceedings. After a brief detention in DHS custody, Hulke was released on bond to fight his case in immigration court. Hulke's asylum, withholding of removal, and CAT claims are currently on appeal before the Seventh Circuit, which granted a stay of Hulke's removal pending the outcome of his case. (*Id.* ¶¶ 23, 24).

    In 2019, due to a variety of factors, Hulke suffered an alcohol relapse and was arrested for another DUI—his first in six years. He served a six-month sentence for the conviction. After he completed his sentence, Hulke

was transferred to Immigration and Customs Enforcement ("ICE") custody on December 3, 2019. He has been incarcerated at Dodge County Detention Facility ever since.

At a bond hearing in the spring of 2020, Hulke's previous immigration attorney—whose alleged failings are the subject of Hulke's appeal before the Seventh Circuit—neglected to secure Hulke's adoptive parents' testimony in support of whether he poses a flight risk. Presently, Hulke brings a habeas petition on the grounds that (1) the immigration judge (the "IJ") applied an incorrect legal standard in determining whether Hulke should be detained, and (2) at this juncture, after over twenty-three months of detention, Hulke has been held for an unconstitutional amount of time and deserves a second bond hearing. The Court will address each argument in turn.

**2.　ANALYSIS**

**2.1　Burden of Proof at Bond Hearings for Noncitizens Detained Pursuant to § 1226(a)(1)**

Hulke is being detained pursuant to 8 U.S.C. § 1226(a)(1), which permits—but does not require—the detention of noncitizens facing removal. It states, in relevant part,

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
> (1)　may continue to detain the arrested alien; and
> (2)　may release the alien on-- [either bond or conditional parole]

In other words, § 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal

proceedings. Section 1226(a)(1) does not describe the burden of proof at the bail hearing, nor does it state to whom the burden should fall.

In contrast, § 1226(c) mandates the detention of noncitizens with criminal conviction that renders them inadmissible or deportable. *See id.* § 1182(a)(2), (a)(3)(B), 1227(a)(2)(A)(i)–(iii), (B)–(D), (a)(4)(B) (listing inadmissible and deportable convictions). Under § 1226(c), bail hearings are only available to people seeking witness protection. If a noncitizen held under § 1226(c) seeks bail on witness protection grounds, § 1226(c)(2) explicitly places the burden of proof on the noncitizen to "satisf[y] the Attorney General that the [noncitizen] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."

When a noncitizen facing removal is first detained pursuant to § 1226(a), the decision of whether to keep him in custody or release him initially falls to a DHS officer. *See* 8 C.F.R. § 236.1(c)(8). If the officer elects custody, the noncitizen may request a bond hearing, at which the officer's decision will be revisited by an IJ. *Id.* §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). Virtually all information is admissible at the bond hearing. 8 C.F.R. § 1003.19(d). An individual may appeal the IJ's bond determination to the Board of Immigration Appeals (the "BIA"), or, if his circumstances change, he may request another bond hearing. 8 C.F.R. §§ 236.1(d)(3), 1003.19(e), (f), 1003.38, 1236.1(d)(3).

There is no Supreme Court case or Seventh Circuit precedent that clarifies which party bears the burden at a § 1226(a)(1) bond hearing. In 2018, the Supreme Court came close to the issue in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), but the ultimate holding is not instructive to this case. In *Jennings*, in an attempt to interpret § 1226(a)(1) in a way that would render

it constitutional, the Ninth Circuit "read" a six-month periodic bond hearing requirement into the statute and ordered that the "Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.* at 847. The Supreme Court overturned this interpretation of § 1226(a)(1), explaining that "nothing" in the statute's text "even remotely supports the imposition of either of those requirements." *Id.* at 847. The Supreme Court explicitly did not reach the constitutional arguments regarding § 1226(a)(1)'s bail provisions. *Id.* at 851–52.

Three years later—while this habeas petition was pending—the First Circuit became the first circuit to squarely reach the constitutionality of § 1226(a)(1)'s bail provisions. The First Circuit concluded that due process requires "the [Government] [to] bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under § 1226(a)." *Hernandez-Lara*, 10 F.4th at 39. Against this backdrop, the Court turns to Hulke's contention that the burden of proof was unconstitutionally applied to him at his §1226(a) bond hearing, such that his due process rights were violated.

### 2.1.1 *Mathews* Test

"No one disputes that the Fifth Amendment entitles noncitizens to due process of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Fifth Amendment's due process protections "appl[y] to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) (internal quotations omitted). To determine whether a § 1226(a) detention violates due process, courts apply the three-part test set forth in *Mathews v.*

*Eldridge*, 424 U.S. 319, 355 (1976), which is used to assess the constitutionality of civil commitments. *See e.g.*, *Hernandez-Lara*, 10 F.4th at 28. The *Mathews* test considers

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Hulke's private interests are greatly affected by the Government's actions. At issue, here, is his liberty. Indeed, Hulke's "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 689–90 (holding that a noncitizen awaiting removal may not be detained indefinitely). Although a noncitizen who is held pursuant to § 1226(a) is in removal proceedings and, therefore, not held indefinitely, *c.f. id.*, "[t]he exact length of detention under § 1226(a) is impossible to predict and can be quite lengthy." *Hernandez-Lara*, 10 F.4th at 29 (noting that, but for the noncitizen's grant of habeas, she would have been incarcerated for over two years).

Hulke has been held for nearly two years pursuant to an administrative detention order, during which time he has challenged the effectiveness of counsel that represented him at his original bond hearing. Because of this two-year detention, he has suffered a significant loss of liberty: he has now spent *years* of his life in jail, "under conditions indistinguishable from those imposed on criminal defendants," all while he awaits the determination of his immigration lawsuit. *Velasco Lopez*, 978 F.3d

at 850 (concluding that, after fifteen months of incarceration, "the district court correctly ordered a new bond hearing where the Government bore the burden of proof"). Hulke's are not "special and narrow[,] nonpunitive circumstances where a special justification . . . outweighs" Hulke's interest in freedom. *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Rather, his circumstances appear to be unchecked, and their punitive nature hampers the very essence of his liberty.

The Court rejects the Government's argument that Hulke can "voluntarily remove himself from the United States at any time." (Docket #9 at 18). Hulke has applied for asylum, withholding of removal, and CAT protection because he claims a genuine fear of persecution or torture if he returns to his home country. It is beyond this Court's jurisdiction to even suggest that Hulke could voluntarily return to his home country at any time—this would be tantamount to suggesting that his fear is ill-founded or ingenuine, which the Court has no authority and no basis on which to do. Moreover, it is difficult to see how the Government could possibly make this argument in good faith—as a practical matter, a person applying for asylum in the United States cannot "voluntarily" return to that country of alleged persecution. *Hernandez-Lara*, 10 F.4th at 29 ("This argument is a bit like telling detainees that they can help themselves by jumping from the frying pan into the fire."); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020) ("[W]e do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings."); *see also Loho v. Mukasey*, 531 F.3d 1016, 1017–19 (9th Cir. 2008) (explaining how a voluntary return to a home country adversely affects an asylum application). Accordingly, the first factor—Hulke's private interest in his liberty—weighs strongly in his favor.

The second *Mathews* factor considers the petitioner's risk of "erroneous deprivation" of his liberty interests if the burden is shifted to him, together with "the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. Under the current procedure, "the Government need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez*, 978 F.3d at 849. A detained noncitizen, on the other hand, bears a significant burden but has "no right to be provided with counsel in immigration proceedings," will often be unrepresented, is "likely [to] experience difficulty in gathering evidence on their own behalf," and is unlikely to know about "immigration law and procedures and the particular preferences of individual IJs." *Hernandez-Lara*, 10 F.4th at 31–32.

Hulke may well be able to counter a showing of evidence from the Government that he is a flight risk—indeed, Hulke appears to have family ready to testify on his behalf—but requiring him to "prov[e] a negative (especially a lack of danger)" is "more difficult than proving a cause for concern," particularly when considered against the Government's comparative resources. *Id.* at 31 (citations omitted). In arguing its position, the Government mistakenly contends that the IJ "made an individualized determination that his detention was necessary because [Hulke] was a danger to others," (Docket #9 at 23), but the Government's misunderstanding homes in on the precise problem with the current standard—the IJ in this case did *not* make such a determination; rather, the IJ "was tasked with determining whether . . . Hulke met his burden to demonstrate that he is *not* a danger." (Docket #13 at 22). There is quite a bit of room for "erroneous deprivation" of liberty under this standard, given the circumstances. Additionally, Hulke's ability to seek reconsideration of

his bond determination does not affect the constitutionality of the burden in the first instance—in seeking reconsideration, he bears yet another burden to demonstrate changed circumstances. 8 C.F.R. § 1003.19(e). As the First Circuit put it, "[l]oaded dice rolled three times are still loaded dice." *Hernandez-Lara*, 10 F 4th at 32. This factor, too, weighs in Hulke's favor.

The final *Mathews* factor addresses the public interest and considers, with it, the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hernandez-Lara*, 10 F.4th at 32 (citing *Mathews*, 424 U.S. at 553). There is no question that § 1226(a) authorizes the state to detain noncitizens who pose a danger to the community or may be flight risks—"[w]hat is at stake . . . [is] who should bear the burden of proving noncitizens pose a danger or a flight risk." *Id*. It is not necessarily in the Government's best interest to operate under a burden of proof that consistently favors incarceration. *See Velasco Lopez*, 978 F.3d at 849 ("[T]he Government need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings."). "Indeed, limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *Hernandez-Lara*, 10 F.4th at 33 (citing *Velasco Lopez*, 978 F.3d at 854 n.11 ("Detention [of noncitizens] costs taxpayers approximately $134 per person, per day, according to ICE's estimates.")).

In this case, it would be in both the Government's and the public's interest for the Government to bear the burden of establishing that Hulke is *actually* a flight risk and a danger to his community. The first detention hearing merely established that Hulke could not prove that he *was not* a

flight risk or a danger to his community—but that is no surprise given the fact that the Government is best able to access information about criminal history and probationary progress. The comparative burden on the Government to prove up danger and flight risk is especially small given that, at bond hearings, the Government is always represented by an attorney who is (presumably) prepared to address these arguments if a petitioner were to raise them. In the event the IJ grants bail, then, in addition to conforming with the strictures of due process, the Government will likely save a significant amount of money during Hulke's months of release. In the alternative, if the IJ determines that detention is warranted, then it will do so under a constitutionally appropriate practice. This final factor, too, weighs in favor of Hulke.

One final, historical note on the public's interest in having the Government bear the burden of proof: the Court notes that, traditionally, there was a presumption in favor of releasing people held pursuant to § 1226(a), and, for a long time, the burden in § 1226(a) bond hearings fell on the Government. In 1950, Congress enacted the Internal Security Act, which embodied an incarnate of the detention provision that, today, is § 1226(a). Notwithstanding major revisions to the immigration statutes in 1965 and 1996, the text of this provision remains basically the same.[1] By enacting this provision, Congress evinced an intent to permit the Government to detain individuals without bail to protect public safety in certain circumstances.

---

[1] *Compare Carlson v. Landon*, 342 U.S. 524, 528 n.5 (1905) (citing and quoting Internal Sec. Act of 1950, § 23, formerly 8 U.S.C. § 156) ("Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under [either bond or parole].") *with* 8 U.S.C. § 1226(a)(1).

Page 10 of 16
Case 2:21-cv-00845-JPS   Filed 11/19/21   Page 10 of 16   Document 15

*Carlson*, 342 U.S. at 538–40 (discussing legislative and judicial history). Nonetheless, there was an abiding presumption that a noncitizen "generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security or that he is a poor bail risk." *Matter of Patel*, 15 I. & N. Dec. 666, 666 (BIA 1976) (citations omitted) (superseded by statute as stated in *Matter of Valdez-Valdez*, 21 I. & N. Dec. 703 (BIA 1997)); *Carlson*, 342 U.S. at 538 ("Of course purpose to injure could not be imputed generally to all aliens subject to deportation, so discretion was placed . . . in the Attorney General"); *id.* at 538 n.31 (describing the Attorney General's discretion and observing that, by late 1951, it was "quite clear . . . that detention without bond has been the exception").

Following statutory amendments in 1996, the Immigration and Naturalization Service "adopted new regulations establishing a presumption of detention in the initial custody determination by the arresting officer." *Hernandez-Lara*, 10 F.4th at 27 (citing 8 C.F.R. § 236.1(c)(2)–(8)). These regulations applied only to the custody officer's initial determination of detention in the first instance; however, by 1999, the BIA had adopted this standard for § 1226(a)(1) bond hearings, which occur before an IJ, as well. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112–13 (BIA 1999) (requiring a person seeking release on bond to "demonstrate that 'release would not pose a danger to property or persons'" given 8 C.F.R. § 236.1(c)(8), even though § 1226(a) contains no such requirement) (abrogated by *Hernandez-Lara*, 10 F.4th 19). Indeed, "[o]ne cannot find in IIRIRA[2] any support at all for the BIA's subsequent reversal of the burden that Congress

---

[2] The Immigration Reform and Immigrant Responsibility Act of 1996.

left undisturbed." *Hernandez-Lara*, 10 F.4th at 35. Accordingly, this Court's conclusion that the burden at a § 1226(a) hearing is best borne by the Government is consistent with the historical trajectory of the statute. The change in tide in 1999 was not due to Congress's concern to alleviate any "fiscal and administrative burdens," *Mathews*, 424 U.S. at 335—rather, it was due to the BIA's application of an administrative regulation that clearly pertained only to DHS officers making initial custody determinations.

### 2.1.2 Government's Arguments

The Government's arguments that the burden should rest with petitioner are wholly unpersuasive. The Government provides examples of procedurally inapposite cases in which the Supreme Court upheld a burden placed on a noncitizen in an immigration proceeding. *See, e.g.*, *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021) (placing a burden on an applicant for cancellation of removal to show that he had not been convicted of a disqualifying offense); *Zadvydas*, 533 U.S. at 701 (placing the burden on two removable noncitizens who could not realistically be removed to any country to show "no significant likelihood of removal in the reasonably foreseeable future" to obtain release).

The Government also relies heavily on cases that assess the constitutionality of mandatory detention requirements. It contends that if the Supreme Court found mandatory detention processes constitutional, then, surely, it would find the permissible bail processes under § 1226(a) constitutional as well. (Docket #9 at 15–16); *Demore v. Kim*, 538 U.S. 510, 518–520 (2003) (upholding mandatory detention pursuant to § 1226(c) on the grounds that Congress acted within its authority to mandate brief detention for a specific group of deportable or inadmissible noncitizens with serious criminal convictions); *Carlson*, 342 U.S. at 540–44 (upholding

congressionally-mandated detention pending removal proceedings in light of congressional findings regarding a specific group of people, i.e., Communists). But this argument does not hit the mark—the issue is not whether the Government has the authority to detain Hulke (it does) but what process is due to Hulke, particularly if faces the risk of being held for a lengthy period. Indeed, even for mandatory detentions pursuant to § 1226(c), due process requires a hearing if the detention is prolonged. *See e.g.*, *German Santos*, 965 F.3d at 206 (concluding a two-and-a-half-year mandatory detention pursuant to § 1226(c) was unreasonable and ordering a bond hearing); *see also Demore*, 358 U.S. at 530 (holding that mandatory detentions under § 1226(c) are constitutional when the majority last one-and-a-half months and the longest last five months).[3]

Finally, the Court addresses the Government's repeated reliance on *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). That case, too, addressed a challenge to mandatory detention under § 1226(c) by a noncitizen who was

---

[3] One case trumpeted by the Government, *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018), held that duration of detention, absent any other alleged constitutional defect, did not warrant a *second* bond hearing for a person held pursuant to § 1226(a). The *Borbot* court observed that § 1226(a) afforded "meaningful process" to noncitizens and acknowledged that, in 1226(a) proceedings, noncitizens bore the burden of proof. *Id.* However, in *German Santos*, the Third Circuit held that a noncitizen's detention for over two-and-a-half years was "unreasonable" and noted that, in the context of a lengthy detention under § 1226(c), "the Government bears the burden of justifying an alien's continued detention" once that detention becomes unreasonable. 965 F.3d at 213–14. The *German Santos* court explained that "when someone stands to lose an interest more substantial than money, we protect that interest by holding the Government to a higher standard of proof." *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)). In reconciling the tension between these cases, the *Hernandez-Lara* court "struggle[d] to see why the Third Circuit would have required those heightened protections [in *German Santos*] if its statement in *Borbot*—that the procedures under § 1226(a) provide 'meaningful process'—indicates that those procedures comply with due process." 10 F.4th at 35. The Court agrees.

inadmissible due to a removable criminal conviction. *Id.* at 955–56. The Seventh Circuit quickly evaluated the *Mathews* factors and determined, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens, . . . the constitutionality of § 1226(c) is ordained." *Id.* at 958. In other words, *Parra* offers nothing new to the analysis. Moreover, in analyzing the *Mathews* factors, the Seven Circuit accounted for the fact that the petitioner's removal was "overwhelmingly likely" given his criminal history, his recent adjudication as "deportable and ineligible for any relief from removal," and the lack of "even [a] hint at a substantive argument that he is entitled to remain in the United States." *Id.* at 956. That petitioner was in a very different position from Hulke, whose deportation has been stayed by the Seventh Circuit, who may be eligible for relief from removal, and whose briefings make substantive arguments that he is entitled to relief.

For all these reasons, the Court joins the "growing chorus of district courts" that have "concluded that due process requires the government bear the burden of proof at § 1226(a) bond hearings." *Dubon Miranda v. Barr*, 463 F. Supp. 3d 632, 646-47 (D. Md. 2020); *see, e.g.*, *Singh v. Barr*, 400 F. Supp. 3d 1005, 1018 (S.D. Cal. 2019) ("[T]he Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that continued detention is justified at a § 1226(a) bond redetermination hearing."); *Diaz-Ceja v. McAleenan*, No. 19-CV-824-NYW, 2019 WL 2774211, at *10 (D. Colo. July 2, 2019) ("[T]he court finds that allocating the burden to a noncitizen to prove that he should be released on bond under § 1226(a) violates due process . . . ."); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) ("[T]here has emerged a consensus view that where, as here, the government seeks to detain an alien

pending removal proceedings, it bears the burden of proving that such detention is justified.") (citing cases).[4]

### 3. CONSTITUTIONALITY OF LENGTH OF DETENTION

As discussed in Section 2.1.2, *supra*, even prolonged *mandatory* detention pursuant to § 1226(c) can violate due process if the noncitizen is not afforded a hearing. *See Vargas v. Beth*, 378 F. Supp. 3d 716 (E.D. Wis. 2019). Thus, Hulke also asks the Court to find that prolonged detention under § 1226(a) requires a second detention hearing. However, the Court need not make a finding on this issue because it has already determined that Hulke is entitled to a second bond hearing given the inappropriate burden placed on him during his original hearing.

### 4. CONCLUSION

For the reasons explained above, the Court will grant Hulke's habeas petition and dismiss the Government's motion to dismiss. Hulke is entitled to a bond redetermination hearing at which the Government must "prove by clear and convincing evidence that [Hulke] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41. For the benefit of the record, if the IJ denies bond, he or she should memorialize the facts and law undergirding the decision. In light of this Order, the Court will deny as moot Petitioner's order to show cause as to why his writ of habeas corpus should not be granted, (Docket #4).

Accordingly,

---

[4] To the extent such a finding is warranted to secure a bond redetermination hearing, *see Singh v. Barr*, 400 F. Supp. 3d at 1019, the Court finds it likely that Hulke was prejudiced by the inappropriate burden allocation for the reasons explained in Section 2.1.1, supra, (i.e., that Hulke was tasked with proving a negative with limited resources).

**IT IS ORDERED** that Hulke's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the parties communicate the terms of this Order to the relevant immigration officials;

**IT IS FURTHER ORDERED** that Hulke be and the same shall be released unless, within Seven (7) court days of this Order, he receives a bond hearing pursuant to the terms of this Order and the IJ determines that his detention should continue;

**IT IS FURTHER ORDERED** that Hulke's motion for order (Docket #4) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the Government's motion to dismiss the petition for habeas corpus (Docket #8) be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge